## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUNTY OF SANTA CLARA D/B/A SANTA CLARA VALLEY MEDICAL CENTER<br>70 West Hedding Street, 9th Floor<br>San Jose, CA 95110 | )<br>)<br>)<br>)<br>) Case No. |
| CITY AND COUNTY OF SAN FRANCISCO D/B/A ZUCKERBERG SAN FRANCISCO GENERAL HOSPITAL AND TRAUMA CENTER AND D/B/A LAGUNA HONDA HOSPITAL AND REHABILITATION CENTER<br>1 Dr Carlton B. Goodlett Pl<br>San Francisco, CA 94102 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| COUNTY OF CONTRA COSTA D/B/A CONTRA COSTA REGIONAL MEDICAL CENTER<br>2500 Alhambra Avenue<br>Martinez, CA 94533 | )<br>)<br>)<br>)<br>) |
| SAINT AGNES HEALTH D/B/A SAINT AGNES HEALTH<br>1303 E. Herndon Avenue<br>Fresno, CA 93720 | )<br>)<br>)<br>)<br>) |
| SAINT FRANCIS HOSPITAL AND MEDICAL CENTER<br>114 Woodland Street<br>Hartford, CT 06105-1208 | )<br>)<br>)<br>) |
| JOHNSON MEMORIAL HOSPITAL, INC. D/B/A JOHNSON MEMORIAL MEDICAL CENTER<br>201 Chestnut Hill Rd<br>Stafford Springs, CT 06076 | )<br>)<br>)<br>)<br>) |
| ST. MARY'S HOSPITAL, INC.<br>56 Franklin Street<br>Waterbury, CT 06706 | )<br>)<br>)<br>) |
| ST. FRANCIS HOSPITAL, INC.<br>7th & Clayton Streets<br>Wilmington, DE 19805 | )<br>)<br>)<br>) |
| HOLY CROSS HOSPITAL, INC.<br>4725 North Federal Highway<br>Fort Lauderdale, FL 33308 | )<br>)<br>) |

1

ST. MARY'S HOSPITAL, INC. D/B/A ST. MARY'S )
HOSPITAL )
1230 Baxter St. )
Athens, GA 30606-3791 )
)
ST. MARY'S SACRED HEART HOSPITAL, INC. D/B/A )
ST. MARY'S SACRED HEART HOSPITAL )
367 Clear Creek Drive )
Lavonia, GA 30553 )
)
ST. ALPHONSUS REGIONAL MEDICAL CENTER, INC)
1055 North Curtis Road )
Boise, ID 83706 )
)
SAINT ALPHONSUS MEDICAL CENTER - NAMPA, )
INC. D/B/A SAINT ALPHONSUS MEDICAL CENTER –)
NAMPA )
1512 12th Avenue Road )
Nampa, ID 83687 )
)
GOTTLIEB MEMORIAL HOSPITAL )
8700 West North Avenue )
Melrose Park, IL 60160 )
)
GOTTLIEB COMMUNITY HEALTH SERVICES )
CORPORATIONS D/B/A MACNEAL HOSPITAL )
3249 South Oak Park Avenue )
Berwyn, IL 60402 )
)
GENESIS HEALTH SYSTEM D/B/A GENESIS )
MEDICAL CENTER SILVIS )
801 Illini Drive )
Silvis, IL 61282 )
)
LOYOLA UNIVERSITY MEDICAL CENTER )
2160 South First Avenue )
Maywood, IL 6015 )
)
ST. JOSEPH'S REGIONAL MEDICAL CENTER – )
SOUTH BEND CAMPUS, INC. )
5215 Holy Cross Parkway )
Mishawaka, IN 46545 )
)
SAINT JOSEPH REGIONAL MEDICAL CENTER – )
PLYMOUTH CAMPUS, INC. D/B/A SAINT JOSEPH )
HEALTH SYSTEM - PLYMOUTH MEDICAL CENTER )

1915 Lake Avenue                                            )
Plymouth, IN 46563                                         )
                                                           )
GENESIS HEALTH SYSTEM D/B/A 1 - GENESIS      )
MEDICAL CENTER DAVENPORT, EAST RUSHOLME )
STREET, D/B/A 2 - GENESIS MEDICAL CENTER      )
DAVENPORT, WEST CENTRAL PARK AVENUE         )
d/b/a 1 – 1227 East Rusholme Street                      )
Davenport, IA 52803                                        )
d/b/a 2 - 1401 West Central Park                          )
Davenport, IA 52804                                        )
                                                           )
SARTORI MEMORIAL HOSPITAL, INC. D/B/A        )
MERCYONE CEDAR FALLS MEDICAL CENTER         )
515 College St                                             )
Cedar Falls, IA 50613                                      )
                                                           )
COVENANT MEDICAL CENTER, INC. D/B/A          )
MERCYONE WATERLOO MEDICAL CENTER           )
3421 W 9th St                                              )
Waterloo, IA 50702                                         )
                                                           )
MERCY HEALTH SERVICES-IOWA, CORP.  D/B/A     )
MERCYONE DUBUQUE MEDICAL CENTER           )
250 Mercy Drive                                            )
Dubuque, IA 52001                                          )
                                                           )
CATHOLIC HEALTH INITIATIVES - IOWA, CORP.     )
D/B/A MERCYONE DES MOINES MEDICAL CENTER )
1111 Sixth Avenue                                          )
Des Moines, IA 50314                                       )
                                                           )
MERCY HEALTH SERVICES – IOWA, CORP D/B/A     )
MERCY MEDICAL CENTER SIOUX CITY              )
801 Fifth Street                                           )
Sioux City, IA 51101                                       )
                                                           )
THE MERCY HOSPITAL, INC. D/B/A MERCY          )
MEDICAL CENTER                                            )
271 Carew St.                                              )
Springfield, MA 01104                                      )
                                                           )
TRINITY HEALTH-MICHIGAN D/B/A TRINITY        )
HEALTH LIVONIA HOSPITAL                          )
36475 Five Mile Road                                       )
Livonia, MI 4815                                           )

TRINITY HEALTH – MICHIGAN D/B/A SAINT                    )
JOSEPH MERCY OAKLAND HOSPITAL                            )
44405 Woodward Avenue                                   )
Pontiac, MI 48341                                       )
                                                        )
TRINITY HEALTH – MICHIGAN D/B/A SAINT                    )
MARY'S HEALTH CARE                                      )
200 Jefferson SE                                        )
Grand Rapids, MI 49503-4502                             )
                                                        )
TRINITY HEALTH-MICHIGAN D/B/A TRINITY                   )
HEALTH LIVINGSTON HOSPITAL                              )
620 Byron Rd.,                                          )
Howell, MI 48843                                        )
                                                        )
TRINITY HEALTH – MICHIGAN D/B/A SAINT                    )
JOSEPH MERCY HOSPITAL ANN ARBOR                         )
5301 E. Huron River Drive                               )
Ann Arbor, MI 48106                                     )
                                                        )
MERCY HEALTH PARTNERS D/B/A TRINITY                     )
HEALTH GRAND HAVEN HOSPITAL                             )
1309 Sheldon Rd.                                        )
Grand Haven, Michigan 49417                             )
                                                        )
ST. JOSEPH MERCY CHELSEA, INC. - TRINITY                )
HEALTH CHELSEA HOSPITAL                                 )
775 South Main Street                                   )
Chelsea, MI 48188                                       )
                                                        )
SAINT PETER'S HOSPITAL OF THE CITY OF                   )
ALBANY D/B/A SAINT PETER'S HOSPITAL                     )
315 S. Manning Blvd.                                    )
Albany, NY 12208                                        )
                                                        )
SAINT JOSEPH'S HEALTH, INC. D/B/A SAINT                 )
JOSEPH'S HOSPITAL HEALTH CENTER                         )
301 Prospect Avenue                                     )
Syracuse, NY 13203                                      )
                                                        )
SAMARITAN HOSPITAL OF TROY, NEW YORK                    )
D/B/A 1 - SAMARITAN HOSPITAL, D/B/A 2 -                 )
SAMARITAN HOSPITAL - ST. MARY'S CAMPUS,                 )
D/B/A 3 - SAMARITAN HOSPITAL - ALBANY                   )
MEMORIAL CAMPUS                                         )
d/b/a 1 - 2215 Burdett Ave                              )

4

Troy, NY 12180                                                      )
d/b/a 2 - 1300 Massachusetts Ave                                    )
Troy, NY 12180                                                      )
d/b/a 3 - 600 Northern Blvd                                         )
Albany, NY 12204                                                    )
                                                                   )
MOUNT CARMEL HEALTH SYSTEM D/B/A MOUNT                              )
CARMEL ST. ANN'S                                                    )
500 S. Cleveland Avenue                                             )
Westerville, OH 43081                                              )
                                                                   )
MOUNT CARMEL HEALTH SYSTEM D/B/A MOUNT                              )
CARMEL WEST                                                        )
6150 E. Broad Street                                               )
Columbus, OH 43213                                                 )
                                                                   )
MOUNT CARMEL HEALTH SYSTEM D/B/A MOUNT                              )
CARMEL NEW ALBANY                                                  )
7333 Smiths Mill Rd                                                )
New Albany, OH 43054                                               )
                                                                   )
MERCY CATHOLIC MEDICAL CENTER OF                                   )
SOUTHEASTERN PENNSYLVANIA D/B/A MERCY                              )
FITZGERALD HOSPITAL                                                )
1500 Lansdowne Ave                                                )
Darby, PA 19023                                                   )
                                                                   )
NAZARETH HOSPITAL D/B/A NAZARETH                                  )
HOSPITAL                                                          )
2601 Holme Ave                                                    )
Philadelphia, PA 19152                                           )
                                                                   )
ST. MARY MEDICAL CENTER D/B/A ST. MARY                            )
MEDICAL CENTER                                                    )
1201 Langhorne Newtown Rd                                        )
Langhorne, PA 19047                                              )
                                                                   )
                                                                   )
                         *Plaintiffs*,                             )
                                                                   )
                   v.                                              )
                                                                   )
XAVIER BECERRA, in his official capacity as                        )
Secretary of Health and Human Services,                            )
200 Independence Avenue, SW                                        )
Washington, DC 20201,                                              )

5

|  | ) |
| --- | --- |
| *Defendant.* | ) |
| | ) |

## **COMPLAINT**

The above-captioned Plaintiff hospitals (the "Hospitals"), by and through their undersigned counsel, bring this action against defendant Xavier Becerra, in his official capacity as the Secretary (the "Secretary") of the Department of Health and Human Services ("HHS"), and state as follows:

## **INTRODUCTION**

1.    The Hospitals challenge the Secretary's decision to convert what Congress intended to be temporary adjustments to the Medicare payment rates for hospitals into a permanent reduction.

2.    The Medicare program reimburses hospitals for inpatient services through the inpatient prospective payment system ("IPPS").  42 U.S.C. § 1395ww(d).  For more than the past decade, the Secretary has applied certain adjustments to the IPPS payment rates as directed by Congress in the TMA, Abstinence Education and QI Programs Extension Act of 2007 ("TMA"), as amended.  Pub. L. No. 110-90, § 7(b)(2), 121 Stat. 984, 986 (2007).

3.    In the American Taxpayer Relief Act of 2012 ("ATRA"), Congress added Section 7(b)(1)(B)(ii) to the TMA, which instructed the Secretary to calculate and apply temporary adjustments to the IPPS payment rates "only during fiscal years 2014, 2015, 2016, and 2017" to reduce payments by $11 billion in that period.  Pub. L. No. 112-240, § 631(b), 126 Stat. 2313 (2013).  In accordance with that directive, the Secretary reduced IPPS payment rates by 0.8 percent in each of federal fiscal years ("FYs") 2014 through 2016 and 1.5 percent in FY 2017, for a total reduction of 3.9 percent.  78 Fed. Reg. 50,496, 50,515-17 (Aug. 19, 2013) (FY 2014 IPPS Final Rule); 79 Fed. Reg. 49,854, 49,873-74 (Aug. 22, 2014) (FY 2015 IPPS Final Rule); 80 Fed. Reg.

49,236, 49,345 (Aug. 17, 2015) (FY 2016 IPPS Final Rule); 81 Fed. Reg. 56,762, 56,785 (Aug. 22, 2016) (FY 2017 IPPS Final Rule).

4.     The Medicare Access and CHIP Reauthorization Act of 2015 ("MACRA"), as amended by the 21st Century Cures Act, added Section 7(b)(1)(B)(iii) to the TMA, which directed the Secretary to gradually remove the ATRA adjustments from the IPPS rates over the course of six years, starting with 0.4588 percent in FY 2018 and 0.5 percent in FYs 2019 through 2023, for a cumulative increase of 2.9588 percent.   Pub. L. No. 114-10, § 414, 129 Stat. 87, 162–63 (MACRA); 21st Century Cures Act, Pub. L. No. 114-255, § 15005, 130 Stat. 1033 (2016).

5.     The net effect of ATRA (-3.9 percent) and MACRA (+2.9588 percent) was a 0.9412 percent decrease in IPPS payments to hospitals.

6.     However, Congress created an insurance policy to prevent any part of the ATRA adjustments from becoming permanently baked into the IPPS rates. Section 7(b)(3)(B) of the 2007 TMA says that "nothing in this section shall be construed as providing authority to apply the adjustments under [ATRA] other than for discharges occurring during fiscal years . . . 2014, 2015, 2016 and 2017 *and each succeeding year through fiscal year 2023*."   TMA § 7(b)(4) (emphasis added).   Simply put, Congress said that whatever remains of ATRA after MACRA must be removed from the IPPS rates after FY 2023. To make assurance doubly sure, Congress specified in Section 7(b)(2) of the TMA that "[a]n adjustment made under paragraph (1)(B) for discharges occurring in a year shall not be included in the determination of standardized amounts for discharges occurring in a subsequent year."

7.     The Secretary has ignored Congress's clear command.   In setting IPPS payment rates for FY 2024, he declined "to adjust payments . . . [to] restore any additional amount of the original 3.9 percentage point reduction" that was made under ATRA."   88 Fed. Reg. 58,640,

7

58,654 (Aug. 28, 2023).  Commenters urged the Secretary to increase the payment rates by 0.9412 percent to avoid "improperly extending payment adjustments beyond the FY 2023 statutory limit." *Id*.  Commenters also suggested alternatively that the Secretary exercise his exceptions and adjustments authority to remove the net effect of ATRA and MACRA on IPPS rates.  *Id*.  But the Secretary failed to meaningfully address them, nor did he provide a rational explanation for his decision to convert what Congress intended to be a temporary adjustment into a permanent one.

8.      Faced with significant underpayments and dissatisfied with the Secretary's decision, the Hospitals timely appealed the publication of the FY 2024 IPPS rates to the Provider Reimbursement Review Board ("PRRB").  In their appeals, the Hospitals asserted that Sections 7(b)(2) and 7(b)(4) of the TMA required the Secretary to remove all remnants of the ATRA adjustments after FY 2023.

9.      In a May 17, 2024, decision, the PRRB dismissed the Hospitals' appeals, holding they are barred by Section 7(b)(5) of the TMA, which says "[t]here shall be no administrative or judicial review . . . of any determination or adjustments made under" Section 7(b) of the TMA.  TMA § 7(b)(5).  In its decision, the PRRB did not address, or even cite, TMA Section 7(b)(2), or Section 7(b)(4), which, as explained above, states that the ATRA adjustments were only authorized "through fiscal year 2023."  *Id*. at § 7(b)(4).

10.     The PRRB's holding principally relied on the decision in *Fresno Community Hospital and Medical Center v. Cochran*, 987 F.3d 158 (D.C. Cir. 2021).  In that case, the D.C. Circuit ruled that Section 7(b)(5) precluded a challenge to the TMA adjustment that the Secretary applied in FY 2018—the 0.4588 adjustment required by Section 7(b)(1)(B)(iii).  But the Board's reliance on *Fresno* is misplaced.  First, unlike the plaintiffs in *Fresno*, the Hospitals are not challenging the Secretary's "determination or adjustments" made under Section 7(b) of the TMA.

Thus, Section 7(b)(5) does not apply to the Hospitals' appeals. Second, Section 7(b)(5) cannot preclude review of *ultra vires* agency action wherein the agency retained negative adjustments beyond the statute's explicit 2023 limit. Thus, the PRRB's dismissal of the Hospitals' appeals fails to meaningfully engage or address key distinctions between this case and *Fresno*.

11.     The Hospitals respectfully ask this Court to set aside the PRRB's dismissal of the Hospitals' appeals and find that the Secretary's decision to flout the clear, specific statutory command in TMA Section 7(b)(2) and 7(b)(4) to remove the remnants of ATRA after FY 2023 is contrary to the explicit direction of Congress. The Hospitals also ask this Court to find unlawful and set aside the Secretary's negative 0.9412 percent payment adjustment for FY 2024 and onward as well as direct the Secretary to recalculate the Hospitals' FY 2024 IPPS payment rate. In both cases, the agency has departed from the "single, best meaning" of the statutory texts. *Loper Bright Enters. v. Raimondo*, No. 22-451, slip op. (U.S. June 28, 2024).

## THE PARTIES

12.     The Plaintiffs in this action are forty-two hospitals (42) hospitals that participate in the Medicare program, are reimbursed under the IPPS, and were paid according to the standardized amounts that the Secretary published for FY 2024. The Plaintiffs are listed below with their Medicare Provider Numbers:

1)  County of Santa Clara d/b/a Santa Clara Valley Medical Center, Medicare Provider No. 05-0038;

2)  City and County of San Francisco d/b/a Zuckerberg San Francisco General Hospital and Trauma Center and d/b/a Laguna Honda Hospital and Rehabilitation Center, Medicare Provider No. 05-0228;

3)  County of Contra Costa d/b/a Contra Costa Regional Medical Center,

Medicare Provider No. 05-0276;

4) Saint Agnes Health d/b/a Saint Agnes Health; Medicare Provider No. 05-0093;

5) Saint Francis Hospital and Medical Center; Medicare Provider No. 07-0002;

6) Johnson Memorial Hospital, Inc. d/b/a Johnson Memorial Medical Center; Medicare Provider No. 07-0008;

7) Saint Mary's Hospital, Inc.; Medicare Provider No. 07-0016;

8) Saint Francis Hospital, Inc.; Medicare Provider No. 08-0003;

9) Holy Cross Hospital, Inc.; Medicare Provider No. 10-0073;

10) St. Mary's Hospital, Inc. d/b/a St. Mary's Hospital; Medicare Provider No. 11-0006;

11) St. Mary's Sacred Heart Hospital, Inc. d/b/a St. Mary's Sacred Heart Hospital; Medicare Provider No. 11-0027;

12) Saint Alphonsus Regional Medical Center, Inc. Medicare Provider No. 13-0007;

13) Saint Alphonsus Medical Center - Nampa, Inc.  d/b/a Saint Alphonsus Medical Center – Nampa; Medicare Provider No. 13-0013;

14) Gottlieb Memorial Hospital; Medicare Provider No. 14-0008;

15) Gottlieb Community Health Services Corporations d/b/a MacNeal Hospital; Medicare Provider No. 14-0054;

16) Genesis Health System d/b/a Genesis Medical Center Silvis; Medicare Provider No. 14-0275;

17) Loyola University Medical Center; Medicare Provider No. 14-0276;

18) Saint Joseph Regional Medical Center – South Bend Campus, Inc; Medicare Provider No. 15-0012;

19) Saint Joseph Regional Medical Center Plymouth Campus, Inc. d/b/a Saint Joseph Health System Plymouth Medical Center; Medicare Provider No. 15-0076;

20) Genesis Health System d/b/a 1 - Genesis Medical Center Davenport, East Rusholme Street d/b/a 2 - Genesis Medical Center Davenport, West Central Park Avenue; Medicare Provider No. 16-0033;

21) Sartori Memorial Hospital, Inc. d/b/a MercyOne Cedar Falls Medical Center; Medicare Provider No. 16-0040;

22) Covenant Medical Center, Inc. d/b/a MercyOne Waterloo Medical Center; Medicare Provider No. 16-0067;

23) Mercy Health Services-Iowa, Corp. d/b/a MercyOne Dubuque Medical Center; Medicare Provider No. 16-0069;

24) Catholic Health Initiatives - Iowa, Corp. d/b/a MercyOne Des Moines Medical Center; Medicare Provider No. 16-0083;

25) Mercy Health Services – Iowa, Corp d/b/a Mercy Medical Center Sioux City; Medicare Provider No. 16-0153;

26) The Mercy Hospital, Inc. d/b/a Mercy Medical Center; Medicare Provider No. 22-0066;

27) Trinity Health-Michigan d/b/a Trinity Health Livonia Hospital; Medicare Provider No. 23-0002;

28) Trinity Health Michigan d/b/a Saint Joseph Mercy Oakland Hospital; Medicare Provider No. 23-0029;

29) Trinity Health – Michigan d/b/a Saint Mary's Health Care; Medicare Provider No. 23-0059;

30) Trinity Health-Michigan d/b/a Trinity Health Livingston Hospital; Medicare Provider No. 23-0069;

31) Trinity Health Michigan d/b/a Saint Joseph Mercy Hospital Ann Arbor; Medicare Provider No. 23-0156;

32) Mercy Health Partners d/b/a Trinity Health Grand Haven Hospital; Medicare Provider No. 23-0174;

33) St. Joseph Mercy Chelsea, Inc. - Trinity Health Chelsea Hospital; Medicare Provider No. 23-0259;

34) Saint Peter's Hospital of the City of Albany d/b/a Saint Peter's Hospital; Medicare Provider No. 33-0057;

35) Saint Joseph's Health, Inc. d/b/a Saint Joseph's Hospital Health Center; Medicare Provider No. 33-0140;

36) Samaritan Hospital of Troy, New York d/b/a 1 - Samaritan Hospital - d/b/a 2 - Samaritan Hospital - St. Mary's Campus - d/b/a 3 - Samaritan Hospital - Albany Memorial Campus; Medicare Provider No. 33-0180;

37) Mount Carmel Health System d/b/a Mount Carmel St. Ann's; Medicare Provider No. 36-0012;

38) Mount Carmel Health System d/b/a Mount Carmel West; Medicare Provider No. 36-0035;

39) Mount Carmel Health System d/b/a Mount Carmel New Albany; Medicare Provider No. 36-0266;

40) Mercy Catholic Medical Center of Southeastern Pennsylvania d/b/a Mercy Fitzgerald Hospital; Medicare Provider No. 39-0156;

41) Nazareth Hospital d/b/a Nazareth Hospital; Medicare Provider No. 39-0204;

42) St. Mary Medical Center d/b/a St. Mary Medical Center; Medicare Provider No. 39-0258;

13.    The Defendant, Xavier Becerra, is the Secretary of HHS, which administers the Medicare and Medicaid programs established under titles XVIII and XIX of the Social Security Act.  Defendant Becerra is sued in his official capacity only.  The Centers for Medicare & Medicaid Services ("CMS") is the federal agency to which the Secretary has delegated administrative authority over the Medicare and Medicaid programs.  References to the Secretary herein are meant to refer to him, his subordinate agencies and officials, and to his official predecessors or successors as the context requires.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare program agency action), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1361 (mandamus).

15.    Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f).

## LEGAL BACKGROUND

### Medicare Payment for Inpatient Hospital Services

16.    Title XVIII of the Social Security Act, as amended, 42 U.S.C. §§ 1395-1395lll (the "Medicare statute") establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease.    42 U.S.C. § 1395c.    Medicare Part A entitles

beneficiaries to payment for inpatient hospital services and other institutional health care services such as skilled nursing facility services and home health care services. Medicare Part B entitles beneficiaries to payment for physician and other medical services such as clinical diagnostic laboratory testing and other diagnostic services.

17. Medicare has reimbursed hospitals for the inpatient services they provide Medicare beneficiaries under the inpatient prospective payment system ("IPPS") since 1983.

18. Under the IPPS, payment is calculated for each inpatient encounter by multiplying a predetermined base payment known as the "standardized amount," which roughly represents the national average cost of a typical inpatient encounter, by a factor (known as a Medicare severity diagnosis-related group or "MS-DRG") reflecting the relative cost of treating patients with the same diagnosis as the patient. The Medicare program recognizes hundreds of MS-DRGs, each of which corresponds to a group of related diagnoses with a separate payment rate. 42 U.S.C. § 1395ww(d). For example, patients with pneumonia diagnoses are grouped to a single MS-DRG that has a standardized payment rate. Patients who are admitted for a hip replacement are grouped to a different MS-DRG with a different payment rate.

19. In advance of each FY, the Secretary announces in the Federal Register the standardized amount and the MS-DRGs that will be used to calculate payment in the coming FY. 42 U.S.C. § 1395ww(e)(4)-(5). Hospitals will then be reimbursed the applicable fixed payment amount for each Medicare inpatient they treat in the forthcoming fiscal year regardless of the patient's length of stay.

## DRGs, MS-DRGs, and Coding Adjustments in the IPPS

20. In FY 2008, the Secretary revamped the IPPS by transitioning from the DRG classification system to the MS-DRG classification system. The stated objective of this change

was "to better recognize increased resource use due to severity of illness."  72 Fed. Reg. 47,130, 47,155 (Aug. 22, 2007) (FY 2008 IPPS Final Rule).

21.     The Secretary anticipated that this change would increase IPPS payments in the aggregate because the MS-DRGs enabled hospitals to "document and code" their patients more accurately to receive more reimbursement for more severe cases.  To offset the anticipated increase in IPPS payments that would occur because of the more accurate coding, the Secretary adjusted the standardized amount to budget neutralize the transition from DRGs to MS-DRGs so that aggregate IPPS payments would remain unchanged.  Specifically, he implemented a "documentation and coding" adjustment of -1.2 percent in FY 2008 and proposed an additional -1.8 percent adjustment in FYs 2009 and 2010.  72 Fed. Reg. at 47,186.

### TMA, Abstinence Education and QI Programs Extension Act of 2007

22.     Before the Secretary's documentation and coding adjustments could take effect, Congress enacted the TMA, Abstinence Education and QI Programs Extension Act of 2007.  Pub. L. No. 110-90, § 7(b)(2), 121 Stat. 984, 986 (2007).  Section 7(a) of the TMA repealed the Secretary's -1.2 percent adjustment for FY 2008 and his proposed -1.8 percent adjustment for FY 2009 and replaced them with statutory documentation and coding adjustments of -0.6 percent in FY 2008 and -0.9 percent in FY 2009.  These adjustments were intended to be permanent.

23.     Recognizing that the statutory adjustments for FY 2008 and 2009 might not fully budget-neutralize the effect of the MS-DRGs, Congress directed the Secretary in Section 7(b)(1) of the TMA to perform a retrospective analysis of FYs 2008 and 2009.  If that analysis demonstrated the need for further adjustments to offset the effect of the MS-DRG rollout, Section 7(b)(1)(A) authorized the Secretary to calculate and implement additional permanent documentation and coding adjustments starting in FY 2010.

24.     Section 7(b)(1)(B) of the 2007 TMA authorized the Secretary to make *temporary* adjustments to the standardized amount "for discharges occurring only during fiscal years 2010, 2011, and 2012" to recover what Medicare would have saved in IPPS payments had the adjustment in Section 7(b)(1)(A) been applied in FYs 2008 and 2009.  To eliminate any doubt that these adjustments were intended to be temporary, Congress specified in Section 7(b)(3)(B) that "[n]othing in this section shall be construed as . . . providing authority to apply the adjustment under paragraph (1)(B) other than for discharges occurring during fiscal years 2010, 2011, and 2012."  To make assurance doubly sure, Congress also added Section 7(b)(2), which states that "[a]n adjustment made under paragraph (1)(B) for discharges occurring in a year shall not be included in the determination of standardized amounts for discharges occurring in a subsequent year."

25.     The Secretary failed to follow the timeline envisioned by Congress.  It was not until FY 2013 that he fully phased in the permanent TMA Section 7(b)(1)(A) adjustments to offset the implementation of the MS-DRGs.  77 Fed. Reg. 53,258, 53,274 (Aug. 31, 2012) (FY 2013 IPPS Final Rule).  As a result of his delay, the Secretary estimated that hospitals were overpaid $11 billion.  *See* 78 Fed. Reg. 27,486, 27,504 (May 10, 2013).  But he was powerless to recoup that amount.

**American Taxpayer Relief Act of 2012**

26.     Congress amended the TMA in the American Taxpayer Relief Act of 2012 ("ATRA") to authorize the Secretary to recover the $11 billion in overpayments occasioned by his delay in fully implementing the adjustment required by TMA Section 7(b)(1)(A).  Pub. L. No. 112-240, § 631(b), 126 Stat. 2313 (2013).  Section 631(b) of ATRA added Section 7(b)(1)(B)(ii) to the TMA, which instructed the Secretary to "make an additional adjustment to the standardized

amounts . . . based upon the Secretary's estimates for discharges occurring only during fiscal years 2014, 2015, 2016, and 2017 to fully offset $11,000,000,000 (which represents the amount of the increase in aggregate payments from fiscal years 2008 through 2013 for which an adjustment was not previously applied)."

27.   To ensure that the ATRA adjustments would not become permanent, Congress amended Section 7(b)(4)(B) to clarify that the statute does not authorize the Secretary to apply any of the adjustments in Section 7(b)(1)(B) "other than for discharges occurring during fiscal years 2010, 2011, 2012, 2014, 2015, 2016 and 2017."

28.   The Secretary implemented the first ATRA adjustment in the FY 2014 IPPS rule. At that time, he said that the ATRA adjustments were temporary and "will be eventually offset by an equivalent positive adjustment once the full $11 billion recoupment requirement has been realized."  78 Fed. Reg. 50,496, 50,515 (Aug. 19, 2013).

29.   The Secretary estimated that he could recoup $11 billion by reducing the standardized amount by 0.8 percent in FYs 2014 through 2017, for a cumulative adjustment of negative 3.2 percent by 2017. 78 Fed. Reg. 50,496, 50,976 (Aug. 19, 2013).  Based on that initial projection, CMS adjusted the rates by -0.8 percent in each of FYs 2014 through 2016.  78 Fed. Reg. 50,496, 50,515-17 (Aug. 19, 2013) (FY 2014 IPPS Final Rule); 79 Fed. Reg. 49,854, 49,873-74 (Aug. 22, 2014) (FY 2015 IPPS Final Rule); 80 Fed. Reg. 49,236, 49,345  (Aug. 17, 2015) (FY 2016 IPPS Final Rule); 81 Fed. Reg. 56,762, 56,785  (Aug. 22, 2016) (FY 2017 IPPS Final Rule).

## Medicare Access and CHIP Reauthorization Act of 2015

30.   Between the time that CMS issued the FY 2016 and 2017 IPPS rules, Congress passed the Medicare Access and CHIP Reauthorization Act of 2015 ("MACRA").  Pub. L. No. 114-10, § 414, 129 Stat. 87, 162–63.  MACRA added Section 7(b)(1)(B)(iii) to the TMA, which

instructed the Secretary "not make the adjustment (estimated to be an increase of 3.2 percent) that would otherwise apply for discharges occurring during fiscal year 2018 by reason of the completion of the [ATRA] adjustments," but to instead increase the standardized amount by 0.5 percent in FYs 2018 through 2023 for a cumulative increase of 3 percent.

31.     MACRA also redesignated Section 7(b)(3)(B) to Section 7(b)(4) and modified that provision to specify that the adjustments under Section 7(b)(1)(B) (including the MACRA adjustments) would only apply through FY 2017 "and each succeeding fiscal year through fiscal year 2023."

32.     A few months after MACRA was enacted, the Secretary published the IPPS rule for FY 2017.  Therein, he announced that the ATRA adjustment for FY 2017 would be almost twice what he had originally estimated—i.e., -1.5 percent instead of -0.8 percent.  The Secretary claimed it was necessary to revisit his original projection "due to lower than previously estimated inpatient spending."  81 Fed. Reg. 56,762, 56,783 (Aug. 22, 2016). As a result, the total ATRA adjustment was 3.9 percent—0.7 percent higher than originally estimated.

### The 21st Century Cures Act and the FY 2018 IPPS Rule

33.     In the 21st Century Cures Act ("Cures Act"), Congress again amended the TMA, this time by replacing MACRA's 0.5 percent adjustment for FY 2018 with an adjustment of 0.4588 percent.  Pub. L. No. 114-255, § 15005, 130 Stat. 1033 (2016); TMA § 7(b)(1)(B)(iii).  The 0.5 percent adjustments for FYs 2019 through 2023 remained unchanged.  As a result, MACRA, as amended by the Cures Act, required the Secretary to make a cumulate adjustment of 2.9588 percent over six years starting in FY 2018.

34.     The Secretary adjusted the IPPS rates by 0.4588 percent in the FY 2018 IPPS rule accordingly.  82 Fed. Reg. 37,991, 38,009 (Aug. 14, 2017).  Commenters to that rule urged the

Secretary to increase the rates by an additional 0.7 percent, which represented the difference between the Secretary's original estimated ATRA adjustments of negative 3.2 percent and what ended up being the final adjustment of negative 3.9 percent.  In support of their position, commenters argued that at the time Congress passed the MACRA, it expected the final ATRA adjustment to be negative 3.2 percent.  Without a 0.7 percent adjustment, the commenters believed that the post-ATRA rates would fall below what Congress had intended.

35.    But the Secretary responded that he did not have the authority to increase the FY 2018 rates beyond the 0.4588 percent authorized by MACRA, as amended by the Cures Act.  82 Fed. Reg. 37,991, 38,009 (Aug. 14, 2017).  He also expressed skepticism that Congress expected him to increase the rates by an additional 0.7 percent, noting that Congress enacted the Cures Act— which reduced the FY 2018 adjustment from 0.5 percent to 0.4588 percent—after he finalized his negative 3.9 percent adjustment in the FY 2017 rule.  *Id.*

36.    A consortium of 683 hospitals filed appeals with the PRRB challenging the Secretary's decision not to increase the FY 2018 rates by 0.7 percent.  The PRRB granted expedited judicial review upon finding it lacked authority to adjudicate the hospitals' appeals.  The hospitals then brought their appeals before this court.

37.    The Court dismissed the hospitals' suit, holding that their challenge fell squarely within the scope of TMA Section 7(b)(5) because they were asking the Court to order the Secretary to make a different adjustment in FY 2018.  "To order the Secretary to make a different adjustment than the one he intended would necessarily require the court to review an adjustment made under TMA § 7(b)."  *Fresno Community Hospital and Medical Center v. Azar*, 370 F.Supp.3d 139, 150 (D.D.C. 2019).  The D.C. Circuit affirmed the district court's decision.  "To say that a -0.7%

adjustment should have 'expired' in 2017 is to say that the 2018 adjustment was off by 0.7%." *Fresno Community Hospital and Medical Center v. Azar*, 987 F.3d 158, 161 (D.C. Cir. 2021).

## FY 2024 IPPS Rule

38.     The Secretary adjusted the standardized amounts for FYs 2019 through 2023 by 0.5 percent each year, as directed by MACRA.  When the dust settled, MACRA had increased the rates by 2.9588 percent over what they were by the end of the ATRA adjustments in FY 2017. After factoring in the -3.9 ATRA adjustment, the net effect of ATRA and MACRA was -0.9412 percent.

39.     In the FY 2024 IPPS rule, commenters urged the Secretary to make a one-time adjustment of 0.9412 percent to remove the lingering effects of ATRA.  In support of their position, commenters pointed to TMA Section 7(b)(4)'s prohibition against applying the adjustments under Section 7(b)(1)(B) "other than for discharges occurring…through fiscal year 2023," and Section 7(b)(2)'s bar on applying adjustments under (1)(B) in subsequent years.  "Commenters stated that the statute is explicit that [the Secretary] may not carry forward any documentation and coding adjustments applied in fiscal years 2010 through 2017 into IPPS rates after FY 2023."  88 Fed. Reg. 58,640, 58,654 (Aug. 28, 2023).  Commenters also asked the Secretary to exercise his exceptions and adjustments authority under 42 U.S.C. § 1395ww(d)(5)(I) to address the shortfall should he disagree that restoration was required by TMA Section 7(b)(4).  *Id*.

40.     Notwithstanding the commenters' legitimate concerns and the clear dictates of Section 7(b)(4), the Secretary declined to adjust the FY 2024 IPPS rates by 0.9412 percent to offset the remnants of the ATRA adjustments.  He acknowledged that the net effect of ATRA and MACRA was a 0.9412 percent reduction in the standardized amount.  But he denied that the statute

authorized or compelled him to make additional positive adjustments beyond those that were required by MACRA and the Cures Act in FYs 2018 through 2023.

> [W]e believe…MACRA and…the 21st Century Cures Act set forth the levels of positive adjustments for FYs 2018 through 2023. We are not convinced that the adjustments prescribed by MACRA were predicated on a specific adjustment level estimated or implemented by CMS in previous rulemaking. We see no evidence that Congress enacted these adjustments with the intent that CMS would make an additional +0.7 percentage point adjustment in FY 2018 to compensate for the higher than expected final ATRA adjustment made in FY 2017, nor are we persuaded that it would be appropriate to use the Secretary's exceptions and adjustments authority under section 1886(d)(5)(I) of the Act to adjust payments in FY 2024 restore any additional amount of the original 3.9 percentage point reduction, given Congress' directive regarding prescriptive adjustment levels under section 414 of the MACRA and section 15005 of the 21st Century Cures Act.

88 Fed. Reg. at 58,654.  The Secretary's response did not even cite or mention Section 7(b)(2) or 7(b)(4).

### The Medicare Appeals Process

41.    Section 1878(a) of the Social Security Act entitles a provider of services under the Medicare program to a hearing before the PRRB if three prerequisites are met: (i) the provider is dissatisfied with a final determination of the Secretary as to the amount of the payment under the Medicare Act; (ii) the provider files a request for hearing within 180 days of the final determination (typically a Notice of Program Reimbursement); and (iii) the amount in controversy is at least $10,000 for an individual appeal or $50,000 for a group appeal.  42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.  If an appeal satisfies these requirements, the PRRB generally has jurisdiction to hear the appeal.

42.    IPPS standardized rate calculations, when published, constitute "final determinations" that may providers can appeal to the PRRB.  42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.

43.     Board decisions regarding substantive or jurisdictional matters, along with any subsequent reversals, affirmances, or modifications by the Secretary regarding those matters, are "final decisions" that providers have a right to challenge by filing a civil action within sixty days following the decision, reversal, affirmance, or modification.  42 U.S.C. § 1395oo(f)(1).

44.     Under 42 U.S.C. § 1395oo(f)(1), a provider may bring an action for judicial review challenging a decision of the PRRB, and such actions "shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA.

## PROCEDURAL HISTORY

45.     In accordance with 42 U.S.C. § 1395oo(a), the Plaintiff hospitals filed the following administrative appeals with the PRRB challenging the Secretary's failure to adjust the standardized amount in FY 2024 by 0.9412 percent to offset the adjustments that were made under TMA Section 7(b)(1)(B):

> 1) Toyon Associates FFY 2024 ATRA/MACRA 0.9412% Adjustment Group, (PRRB Case No. 24-1464G);
>
> 2) Trinity Health FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group, (PRRB Case No. 24-1461C).

46.     The Board dismissed the Hospitals' appeals by decision dated May 17, 2024, holding that their challenge was barred by Section 7(b)(5) of the TMA.  Exhibit 2, Board's Notice of Dismissal at 13-14.

47.     The PRRB's decision was based on perceived similarities between the Hospitals' appeals and the *Fresno* case.  The PRRB concluded (wrongly) that the *Fresno* court "directly addressed" the arguments in the Hospitals' appeals.  But the Hospitals' principal argument is that Section 7(b)(4) of the TMA required the Secretary to adjust the standardized amount in FY 2024

to remove all traces of the adjustments that were made in prior years under Section 7(b)(1)(B). Exhibit 2, Board's Notice of Dismissal at 13.  The *Fresno* court never had occasion to consider the requirements of Section 7(b)(4).

48.    Because the Board's decision to dismiss the group appeals is the "final decision of the Board," 42 U.S.C. § 1395oo(f)(1), the Plaintiff hospitals now timely appeal to this Court.

<u>COUNT I</u>
<u>The Provider Reimbursement Review Board's Decision is Contrary to Law</u>

49.    The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

50.    The PRRB's decision dismissing the Hospitals' jurisdictionally proper appeals is contrary to law.  The PRRB acknowledged that the Hospitals' appeals met the jurisdiction requirements set forth in 42 U.S.C. § 1395oo(a).  "The Board would normally have jurisdiction over this type of issue . . . ."  Exhibit 2, Board's Notice of Dismissal at 9.  But the PRRB ruled that the Hospitals' challenge was barred by TMA Section 7(b)(5).

51.    A statute precluding review "must be read narrowly" since there is a "strong presumption that Congress intends judicial review of administrative action*."   El Paso Natural Gas Co. v. United States*, 632 F.3d 1272, 1276 (D.C. Cir. 2011).  An appropriately narrow reading of TMA Section 7(b)(5) does not bar review of the Secretary's refusal to adjust the FY 2024 rates to remove the remnants of the adjustments made in prior years under Section 7(b)(1)(B).

52.    At best, a jurisdiction-stripping provision can only shield actions that are within the scope of an agency's power.  *Am. Hosp. Ass'n v. Azar*, 964 F.3d 1230, 1238 (D.C. Cir. 2020) ("If [a] court finds that the agency has acted outside the scope of its statutory mandate, we also find that we have jurisdiction.") (cleaned up).  While TMA Section 7(b)(5) "precludes judicial review of any adjustment [or determination] made by the Secretary pursuant to his statutory authority"

23

under Section 7(b), it does not preclude review of adjustments or determinations "for which such authority is lacking." *Id.* (cleaned up). The Secretary does not have authority to ignore TMA Section 7(b)(4)'s command to remove all Section 7(b) adjustments from the standardized amount after FY 2023. His refusal to comply with Section 7(b)(4) is neither a "determination [n]or adjustment made under" section 7(b). Thus, Section 7(b)(5) does not apply to Hospitals' claims seeking to enforce Section 7(b)(4).

53.     Even if Section 7(b)(5) were applicable here (it is not), it still would not shield the Secretary from review of his *ultra vires* refusal to comply with TMA Section 7(b)(4).

<u>**COUNT II**</u>
**The Provider Reimbursement Review Board's Decision Is**
**<u>Arbitrary and Capricious and Unsupported by Substantial Evidence</u>**

54.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

55.     Under the APA, agency action is unlawful when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).

56.     The PRRB's decision is arbitrary and capricious because it did not rationally explain its reasoning for dismissing the Hospitals' appeals. The Hospitals are seeking to enforce Section 7(b)(4), which expressly prohibits the Secretary from applying the TMA Section 7(b) adjustments beyond FY 2023. The PRRB entirely failed to explain how Section 7(b)(5) applies to the Hospitals' claims because it did not even cite to—let alone analyze—Section 7(b)(4). Nor did the PRRB cite or attempt to square its decision with Section 7(b)(2).

57.     The PRRB also committed reversable error in concluding that the *Fresno* court "directly addressed" the arguments in the Hospitals' appeals. The thrust of the Hospitals' claims

is that Section 7(b)(4) prohibits the Secretary from applying the adjustments he made under Section 7(b) after FY 2023. *Fresno* involved a challenge of the standardized amount that was calculated for FY 2018—i.e., *before* FY 2023. The requirements of Section 7(b)(4) simply did not apply to *Fresno*.

58.     Moreover, the PRRB overlooked that *Fresno* is distinguishable on the facts. The plaintiffs in *Fresno* challenged the Secretary's refusal to increase the rates in FY 2018 by an additional 0.7 percent, which the court ruled was tantamount to challenging the 0.4588 percent adjustment that was prescribed for that year in TMA Section 7(b)(1)(B). *Fresno*, 370 F.Supp.3d at 150 ("To order the Secretary to make a different adjustment than the one he intended would necessarily require the court to review an adjustment made under TMA § 7(b)."); *Fresno*, 987 F.3d at 161 ("To say that a -0.7% adjustment should have 'expired' in 2017 is to say that the 2018 adjustment was off by 0.7%."). Unlike the plaintiffs in *Fresno*, the Hospitals are not challenging an adjustment or determination under TMA Section 7(b). Rather, they are challenging the Secretary's refusal to remove the now-expired remnants of the adjustments he made in past years under Section 7(b)(1)(B) as required by Section 7(b)(4).

## COUNT III
### The Secretary's Refusal to Adjust the FY 2024 Standardized Amount by 0.9412 Percent Is Contrary to Law

59.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

60.     Under the APA, agencies may not act "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

61.     The Secretary's refusal to adjust the standardized amount by 0.9412 percent in FY 2024 violates TMA Section 7(b)(4), which prohibits him from applying the adjustments he made

under TMA Section 7(b) after FY 2023.  By failing to remove what remains of those adjustments in FY 2024, the Secretary has applied those adjustments after FY 2023. The Secretary's refusal to remove the ATRA adjustments also violates Section 7(b)(2), which prohibits carrying forward those adjustments into subsequent years.

62.     This result defies the express command in Section 7(b)(4), and is therefore contrary to law, in excess of statutory limitations and short of a statutory right.

### COUNT IV
### The Secretary's Refusal to Adjust the FY 2024
### Standardized Amount by 0.9412 Percent Is Arbitrary and Capricious

63.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

64.     The Secretary's refusal to remove the TMA Section 7(b)(1)(B) adjustments after FY 2023 is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

65.     The Secretary failed to adequately explain his reasoning for converting what Congress intended to be temporary adjustments to the standardized amount into a permanent adjustment.  In the FY 2024 IPPS rule, he did not even attempt to square his decision with the text of Section 7(b)(4), nor did he provide a meaningful or reasoned response to commenters who questioned whether continuing the Section 7(b) adjustments beyond FY 2023 violated of Section 7(b)(4).

66.     The Secretary also failed to provide a reasoned explanation for his departure from past practice.  In FY 2013, the Secretary removed the temporary adjustments he had made under TMA Section 7(b)(1)(B)(i) to the standardized amount in FYs 2010 and 2011.  "[T]o avoid continuing the −2.9 percent adjustment finalized in FY 2012, for FY 2013, we are finalizing the

+2.9 percent adjustment to the standardized amount…."  77 Fed. Reg. 53,258, 53,690 (Aug. 31, 2012).  Yet in FY 2024, the Secretary refused to remove the remnants of the adjustments made under TMA Section 7(b)(1)(B)(ii).  The Secretary does not explain the different outcomes here, nor can he.

<u>**COUNT V**</u>
**<u>The Secretary's Refusal to Exercise His Discretion under</u>**
**<u>42 U.S.C. § 1395ww(d)(5)(I) is Arbitrary and Capricious and an Abuse of Discretion</u>**

67.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

68.     The APA requires the Secretary to afford interested parties the opportunity to comment on proposed rules, and to consider those comments before finalizing a proposed rule.  5 U.S.C. § 553(b)-(c).

69.     The Secretary failed in the FY 2024 IPPS Rule to adequately address commenters' requests for him to exercise his "exceptions and adjustments" authority under 42 U.S.C. § 1395ww(d)(5)(I) to adjust IPPS rates by 0.9412 percent to remove all remaining traces of TMA the Section 7(b) adjustments.

70.     The Secretary's refusal to restore the 0.9412 percent adjustment was also an abuse of discretion since there is simply no rational basis for maintaining the ATRA adjustments and permanently reducing Medicare inpatient payments by almost 1 percent after those adjustments had achieved their explicitly stated goal of recouping the $11 billion CMS had previously overpaid hospitals.

71.     The Board's failure to "address or consider" whether the Secretary's refusal to exercise his exceptions and adjustments authority constituted an abuse of discretion is itself arbitrary and capricious and an abuse of discretion.  The Board refused to consider this argument because it alleges it was not properly presented in the "issue statement" that accompanied the filing

that initiated the Hospitals' appeals.  Exhibit 2, Board's Notice of Dismissal at 13-14.  But the issue statement is meant to be a "*concise*" statement of the issue which cites the controlling authority and why the adjustment is incorrect.  Having met that standard, there is no requirement that the issue statement also catalogue every legal failing or every possible legal argument the hospitals intend to raise.  Not only is the Board's refusal to consider this argument therefore contrary to law, it is also an arbitrary and capricious departure from the way the Board has treated issue statements in the past where the Board has routinely considered specific legal arguments that are not explicitly stated in a hospital's "concise" issue statement.

**COUNT VI**
**The Secretary's Refusal to Adjust the FY 2024 Standardized Amount by at Least**
**0.7 Percent Is Contrary to Law, Arbitrary and Capricious, and an Abuse of Discretion**

72.      The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

73.      At a minimum, the Secretary should have restored 0.7 percent of the 0.9412 percent payment reduction since that part of the adjustment was never authorized by Congress in the first place.  When Congress instructed the Secretary to restore 3.0 percent of the ATRA adjustment, the Secretary had estimated that those adjustments would total just 3.2 percent. 80 Fed. Reg. at 49,345. The Secretary's argument that his subsequent decision to increase the ATRA adjustment from 3.2 percent to 3.9 percent thereby justifies a permanent 0.7 percent reduction to all Medicare inpatient payments for all future years is contrary to law and arbitrary and capricious.

74.      Permanently maintaining that 0.7 payment reduction also constitutes an abuse of discretion.  As stated above, there is no basis for maintaining *any part* of the ATRA adjustments once those adjustments had successfully recouped the $11 billion CMS had previously overpaid

hospitals.  Much less, therefore, is there a rational basis for maintaining a part of the ATRA adjustments that was not authorized by Congress but was, at best, a product of happenstance.

## COUNT VII
## Mandamus (28 U.S.C. § 1361)

75.    The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

76.    Pursuant to 28 U.S. Code § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

77.    The Secretary's IPPS standardized amount IPPS payments to the Hospitals are unlawful under the TMA, APA, and Medicare Act and must be corrected.  The Hospitals are entitled to a writ of mandamus directing the Secretary to correct the unlawful payment reduction for FY 2024.

## COUNT VIII
## All Writs Act (28 U.S.C. § 1651)

78.    The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

79.    Pursuant to 28 U.S. Code § 1651, "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

80.    The Secretary's IPPS standardized amount IPPS payments to the Hospitals are unlawful under the TMA, APA, and Medicare Act and must be corrected.  The Hospitals are entitled to issuance of an order requiring the Secretary to eliminate the unlawful permanent reduction to the IPPS rate.

## REQUEST FOR RELIEF

WHEREFORE, the Hospitals respectfully request the following orders:

A.  Vacating the PRRB's ruling that it lacks jurisdiction over the Hospitals' claims and reinstating the Hospitals' appeals;

B.  An order directing the Secretary to recalculate the standardized amount for FY 2024 by applying a positive adjustment in the amount of 0.9412 percent (or, at a minimum, 0.7 percent), to recalculate the Hospitals' IPPS payments for FY 2024 accordingly, and to make payments due to the Hospitals plus interest calculated under 42 U.S.C. § 1395oo(f)(2);

C.  In the alternative, a writ of mandamus ordering the Secretary to recalculate the FY 2024 standardized amount as described above;

D.  An order giving the Court continuing jurisdiction over this action until the Secretary has complied with the Courts orders;

E.  An order requiring the agency to pay legal fees and cost of suit incurred by the Plaintiffs; and

F.  An order providing such other relief as the Court may consider appropriate.


Date: July 16, 2024                    Respectfully submitted,

                                       */s/ Long Do*
                                       Long Do (Bar No 211439)
                                       long@athenelaw.com
                                       Athene Law, LLP
                                       5432 Geary Boulevard, Suite 200
                                       San Francisco, CA  94121
                                       Phone:  415-680-7419
                                       *Attorney for Plaintiffs*