

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Provider Reimbursement Review Board
7500 Security Boulevard
Mail Stop B1-01-31
Baltimore, MD 21244
410-786-2671

**Via Electronic Delivery**

Lisa Ellis
Toyon Associates, Inc.
1800 Sutter Street, Suite 600
Concord, CA 94520

RE: *Notice of Dismissal*
Toyon FFY 2024 ATRA/MACRA .9412% Adjustment Groups
Case Nos. 24-1419GC, *et al*. (*see* Appendix A for listing of 18 group cases)

Dear Ms. Ellis:
QRS & Hall Render
Toyon
Moss Adams

The Provider Reimbursement Review Board ("Board") has reviewed the records in the above-referenced group appeals. The decision of the Board to dismiss the appeals for lack of substantive jurisdiction is set forth below.

**Issue in Dispute:**

The Providers challenge their federal fiscal year ("FY") 2024 IPPS payments on the grounds that those payments were (and continue to be) improperly reduced due to the failure to eliminate the adjustments under paragraph 7(b)(1)(B) of the TMA Abstinence Education, and QI Programs Extension Act of 2007, Pub. L. No. 110–90, 121 Stat. 984, 986-87, *as amended* ("TMA"),[1] such that a negative 0.9412 percent adjustment continues past FFY 2023. This negative 0.9412 percent adjustment to IPPS rates is the net result of all adjustments under section 7(b)(1)(B) of the TMA that were continued rather than eliminated in the FY 2024 IPPS Final Rule.[2]

**Statutory and Regulatory Background:**

In the FY 2008 inpatient prospective payment system ("IPPS") final rule,[3] the Secretary[4] adopted the Medicare severity diagnosis-related group ("MS–DRG") patient classification system for the IPPS, effective October 1, 2007, to better recognize severity of illness in Medicare payment rates for acute care hospitals. The adoption of the MS–DRG system resulted in the expansion of the number of DRGs from 538 in FY 2007 to 745 in FY 2008.  The Secretary believed that, by increasing the number of MS–DRGs and more fully taking into account patient severity of illness

---

[1] As discussed *infra*, the TMA has been amended multiple times.
[2] *E.g.*, PRRB Case 24-1419GC Statement of the Issue at 1-2 (Feb. 22, 2024).
[3] 72 Fed. Reg. 47130, 47140-47189 (Aug. 22, 2007).
[4] of the Department of Health and Human Services.

**EXHIBIT 1**

in Medicare payment rates for acute care hospitals, MS–DRGs would encourage hospitals to improve their documentation and coding of patient diagnoses.[5]

In the FY 2008 IPPS final rule, the Secretary indicated that the adoption of the MS–DRGs had the potential to lead to increases in aggregate payments without a corresponding increase in actual patient severity of illness due to the incentives for additional documentation and coding. In that final rule, the Secretary exercised the authority under section 42 U.S.C. § 1395ww(d)(3)(A)(vi), which authorizes the Secretary to maintain budget neutrality by adjusting the national standardized amount, to eliminate the estimated effect of changes in coding or classification that do not reflect real changes in case-mix. CMS actuaries estimated that maintaining budget neutrality required an adjustment of -4.8 percent to the national standardized amount. The Secretary provided for phasing in this -4.8 percent adjustment over 3 years. Specifically, the Secretary established prospective documentation and coding adjustments of -1.2 percent for FY 2008, -1.8 percent for FY 2009, and -1.8 percent for FY 2010.[6]

On September 29, 2007, Congress enacted the TMA [Transitional Medical Assistance], Abstinence Education, and QI [Qualifying Individuals] Programs Extension Act of 2007 ("TMA").[7] TMA § 7(a) reduced the documentation and coding adjustment made as a result of the MS–DRG system that the Secretary adopted in the FY 2008 IPPS final rule to -0.6 percent for FY 2008 and -0.9 percent for FY 2009.[8]

The Secretary implemented a series of adjustments required under TMA §§ 7(b)(1)(A) and 7(b)(1)(B) based on a retrospective review of FY 2008 and FY 2009 claims data. The Secretary completed these adjustments in FY 2013.  However, the Secretary commented in the FY 2013 IPPS final rule that delaying full implementation of the adjustment required under TMA § 7(b)(1)(A) until FY 2013 had resulted in payments in FY 2010 through FY 2012 being overstated, and that these overpayments could not be recovered.[9]

Congress revisited TMA § 7(b)(1)(B) as part of the American Taxpayer Relief Act of 2012 ("ATRA").[10] Specifically, ATRA § 631 amended TMA § 7(b)(1)(B) to add clause (ii) which required the Secretary to make a recoupment adjustment or adjustments totaling $11 billion for discharges occurring during FYs 2014 to 2017.  Per the revisions made by ATRA § 631(b), this adjustment "represents the amount of the increase in aggregate payments from fiscal years 2008 through 2013 for which an adjustment was not previously applied" (*i.e.*, represents the amount of the increase in aggregate payments as a result of not completing the prospective adjustment authorized under TMA § 7(b)(1)(A) until FY 2013).[11] As discussed above, this delay in implementing TMA § 7(b)(1) resulted in overstated payment rates in FYs 2010, 2011, and 2012 and the resulting overpayments could not have been recovered under the original TMA § 7(b).

---

[5] 81 Fed. Reg. 56762, 56780 (Aug. 22, 2016).
[6] *See* 82 Fed. Reg. 37990, 38008 (Aug. 17, 2017).
[7] Pub. L. 110–90, 121 Stat. 984 (2007).
[8] *Id.* at 986.
[9] *See* 82 Fed. Reg. at 38008.
[10] Pub. L. 112-240, 126 Stat. 2313 (2013).
[11] *Id.* at 2353.

The adjustment required under ATRA § 631 was a one-time recoupment of a prior overpayment, not a permanent reduction to payment rates. Therefore, the Secretary "anticipated that any adjustment made to reduce payment rates in one year would eventually be offset by a positive adjustment in FY 2018, once the necessary amount of overpayment was recovered."[12] However, Congress again stepped in to revise TMA § 7(b)(1)(B). First, in § 414 of the Medicare Access and CHIP Reauthorization Act of 2015 ("MACRA"), Congress revised TMA § 7(b)(1)(B) to add clause (iii) which replaced the single positive adjustment the Secretary intended to make in FY 2018 with a 0.5 percentage point positive adjustment for each of FYs 2018 through 2023.[13] Second, in § 15005 of the 21st Century Cures Act ("21-CCA"),[14] Congress amended the MACRA revision in TMA § 7(b)(1)(B)(iii) by reducing the adjustment for FY 2018 from 0.5 percentage points to 0.4588 percentage points.[15]

The Secretary's "actuaries estimated that a -9.3 percentage point adjustment to the standardized amount would be necessary if CMS were to fully recover the $11 billion recoupment required by [ATRA § 631] in FY 2014." Consistent with the policies that the Secretary has adopted in many similar situations, the Secretary implemented a phased in approach.  For the first year, FY 2014, he implemented a -0.8 percentage point recoupment adjustment to the standardized amount. The Secretary declined, at that time, to set specific adjustments for FYs 2015, 2016, or 2017 "[a]s estimates of any future adjustments are subject to variations in total savings[.]"[16] However, he did estimate that, if adjustments of -0.8 percentage point were implemented in FYs 2014, 2015, 2016, and 2017, using standard inflation factors, then the requisite $11 billion would be recouped by the end of the statutory 4-year timeline.[17]

Consistent with the approach discussed in the FY 2014 rulemaking for recouping the $11 billion required by ATRA § 631, in the FY 2015 IPPS/LTCH PPS final rule[18] and the FY 2016 IPPS/LTCH PPS final rule,[19] the Secretary implemented additional -0.8 percentage point recoupment adjustments to the standardized amount in FY 2015 and FY 2016, respectively. The Secretary estimated that these adjustments, combined with leaving the prior -0.8 percentage point adjustments in place, would recover up to $2 billion in FY 2015 and another $3 billion in FY 2016. When combined with the approximately $1 billion adjustment made in FY 2014, the Secretary estimated that approximately $5 to $6 billion would be left to recover under ATRA § 631 by the end of FY 2016.

In the FY 2017 IPPS/LTCH PPS proposed rule,[20] due to lower than previously estimated inpatient spending, the Secretary determined that an adjustment of -0.8 percentage point in FY 2017 would not recoup the $11 billion under ATRA § 631. For the FY 2017 IPPS/LTCH PPS Final Rule,[21] the Secretary's actuaries estimated that, to the nearest tenth of a percentage point, the FY 2017 documentation and coding adjustment factor that would recoup as closely as possible $11 billion from FY 2014 through FY 2017 without exceeding this amount is -1.5 percentage points. Based on

---

[12] 82 Fed. Reg. at 38008.
[13] Pub. L. 114–10, § 414, 129 Stat. 87, 162-163 (2015).
[14] Pub. L. 114–255, 130 Stat. 1033 (2016).
[15] *Id.* at 1319-1320.  *See also* 82 Fed. Reg. at 38008.
[16]  82 Fed. Reg. at 38008.
[17] *Id.*
[18] 79 Fed. Reg. 49853, 49874 (Aug. 22, 2014).
[19] 80 Fed. Reg. 49326, 49345 (Aug. 17, 2015).
[20] 81 Fed. Reg. 24946, 24966 (Apr. 27, 2016).
[21] 81 Fed. Reg. 56761 (Aug. 22, 2016).

those updated estimates by the Office of the Actuary, the Secretary made a -1.5 percentage point adjustment for FY 2017 as the final adjustment required under ATRA § 631.[22]

Once the recoupment required under ATRA § 631 was complete, the Secretary anticipated making a single positive adjustment in FY 2018 to offset the reductions required to recoup the $11 billion under ATRA § 631. However, MACRA § 414 (which was enacted on April 16, 2015) replaced the single positive adjustment the Secretary intended to make in FY 2018 with a 0.5 percentage point positive adjustment for each of FYs 2018 through 2023. In the FY 2017 rulemaking, the Secretary indicated that he would address the adjustments for FY 2018 and later fiscal years in future rulemaking. As noted previously, 21-CCA § 15005, which was enacted on December 13, 2016, amended TMA § 7(b)(1)(B) (as amended by ATRA § 631 and MACRA § 414) to reduce the adjustment for FY 2018 from a 0.5 percentage point to a 0.4588 percentage point. The Secretary believed the directive under 21-CCA § 15005 to be clear and, as a result, in the FY 2018 IPPS/LTCH PPS proposed rule for FY 2018, the Secretary proposed to implement the required +0.4588 percentage point as a permanent adjustment to the standardized amount.[23]

### A. The Final IPPS Rule for FY 2018

In response to the +0.4588 percentage point adjustment, several commenters reiterated their disagreement with the -1.5 percentage point adjustment that CMS made for FY 2017 under ATRA § 631, which exceeded the estimated adjustment of approximately -0.8 percentage point described in the FY 2014 IPPS/LTCH PPS rulemaking. Commenters contended that, as a result, hospitals would be left with a larger permanent cut than Congress intended following the enactment of MACRA. They asserted that CMS' proposal to apply a 0.4588 percent positive adjustment for FY 2018 misinterprets the relevant statutory authority, and urged the Secretary to align with their view of Congress' intent by restoring an additional +0.7 percentage point adjustment to the standardized amount in FY 2018 (*i.e.*, the difference between the -1.5 percentage point adjustment made in FY 2017 and the initial estimate of -0.8 percentage point discussed in the FY 2014 IPPS/LTCH PPS rulemaking). The commenters also urged the Secretary to use his discretion under 42 U.S.C. § 1395ww(d)(5)(I) to increase the FY 2018 adjustment by 0.7 percentage point. Other commenters requested that, despite current law, CMS ensure that adjustments totaling the full 3.9 percentage points withheld under ATRA § 631 be returned.[24]

The Secretary responded by stating that, as discussed in the FY 2017 IPPS/LTCH PPS Final Rule,[25] CMS had completed the $11 billion recoupment required under ATRA § 631. The Secretary also continued to disagree with commenters who asserted that MACRA § 414 was intended to augment or limit the separate obligation under the ATRA to fully offset $11 billion by FY 2017.[26] Moreover, the Secretary pointed out in the FY 2018 IPPS/LTCH PPS proposed rule, he believed that the directive regarding the applicable adjustment for FY 2018 is clear. While the Secretary had anticipated making a positive adjustment in FY 2018 to offset the reductions required to recoup the $11 billion under ATRA § 631, MACRA § 414 requires that he not make the single positive adjustment he intended to make in FY 2018 but instead make a 0.5 percentage point positive

---

[22] *Id.* at 56785.
[23] 82 Fed. Reg. at 38009.
[24] *Id.*
[25] 81 Fed. Reg. 56783-85.
[26] *Id.* at 56784.

adjustment for each of FYs 2018 through 2023. The Secretary pointed out that, as noted by the commenters and discussed in the FY 2017 IPPS/LTCH PPS Final Rule, by phasing in a total positive adjustment of only 3.0 percentage points, MACRA § 414 would not fully restore even the 3.2 percentage point adjustment originally estimated in the FY 2014 IPPS/LTCH PPS final rule.[27] Finally, the Secretary noted that 21-CCA § 15005 further reduced the positive adjustment required for FY 2018 from 0.5 percentage point to 0.4588 percentage point and that this change was enacted on December 13, 2016, *after* CMS had proposed and finalized the -1.5 percentage point adjustment as the final adjustment required under ATRA § 631 in the FY 2017 rulemaking. The Secretary finalized the +0.4588 percentage point adjustment to the standardized amount for FY 2018, as required under 21-CCA § 15005.[28]

### B. The FY 2019 Adjustment to the Standardized Amount

In the Final Inpatient PPS Rule for FY 2019,[29] the Secretary finalized a +0.5 percentage point adjustment to the standardized amount for FY 2019, as required under MACRA § 414.

In the IPPS Final Rule, several commenters argued that the Secretary misinterpreted the Congressional directives regarding the level of positive adjustment required for FY 2018 and FY 2019. The commenters contended that, while the positive adjustments required under MACRA § 414 would only total 3.0 percentage points by FY 2023, the levels of these adjustments were determined using an estimated positive ''3.2 percent baseline'' adjustment that otherwise would have been made in FY 2018. The commenters believed that, because CMS implemented an adjustment of -1.5 percentage points instead of the expected -0.8 percentage points in FY 2017, totaling -3.9 percentage points overall, the Secretary has imposed a permanent -0.7 percentage point negative adjustment beyond its statutory authority, contravening what the commenters contend was Congress' clear instructions and intent. The commenters requested that the Secretary reverse his previous position and implement additional 0.7 percentage point adjustments for both FY 2018 and FY 2019. Some of the commenters requested that the Secretary use his statutory discretion to ensure that all 3.9 percentage points in negative adjustment be restored. In addition, some of the commenters acknowledged that CMS may be bound by law but expressed opposition to the permanent reductions and requested that the Secretary refrain from making any additional coding adjustments in the future.[30]

The Secretary responded by stating that, as discussed in the FY 2019 IPPS/LTCH PPS proposed rule, he believed MACRA § 414 and 21-CCA § 15005 clearly set forth the levels of positive adjustments for FYs 2018 through 2023. He was not convinced that the adjustments prescribed by MACRA were predicated on a specific ''baseline'' adjustment level. While he had anticipated making a positive adjustment in FY 2018 to offset the reductions required to recoup the $11 billion under ATRA § 631, MACRA § 414 required that a 0.5 percentage point positive adjustment be implemented for each of FYs 2018 through 2023, rather than the single positive adjustment he had anticipated making in FY 2018. As discussed in the FY 2017 IPPS final rule, by phasing in a total positive adjustment of only 3.0 percentage points, MACRA § 414 would not fully restore even the

---

[27] 78 Fed. Reg. 50496, 50515 (Aug. 19, 2013).
[28] 82 Fed. Reg. at 38009.
[29] 83 Fed. Reg. 41144 (Aug. 17, 2018).
[30] *Id.* at 41157.

3.2 percentage points adjustment originally estimated in the FY 2014 IPPS final rule.[31] Moreover, as discussed in the FY 2018 IPPS Final Rule, 21-CCA § 15005 further reduced the positive adjustment required for FY 2018 from 0.5 percentage point to 0.4588 percentage point and this adjustment was enacted on December 13, 2016, *after* the Secretary had proposed and finalized the final negative -1.5 percentage points adjustment required under ATRA § 631. The Secretary did not believe that Congress enacted these adjustments with the intent that there would be an additional +0.7 percentage point adjustment in FY 2018 to compensate for the higher than expected final ATRA adjustment made in FY 2017.[32]

C. *The FY 2020 to FY 2023 Adjustments to the Standardized Amount*

In IPPS Final Rules for FYs 2020 through FY 2023, the Secretary adopted only a +.5 percent adjustment. In this regard, the Secretary stated the following in the preamble to the FY 2020 IPPS Final Rule:

> In the FY 2020 IPPS/LTCH PPS proposed rule (84 FR 19170 through 19171) consistent with the requirements of section 414 of the MACRA, we proposed to implement a 0.5 percentage point positive adjustment to the standardized amount for FY 2020. We indicated that this would constitute a permanent adjustment to payment rates. We stated in the proposed rule that we plan to propose future adjustments required under section 414 of the MACRA for FYs 2021 through 2023 in future rulemaking.
>
> ****
>
> As we discussed in the FY 2020 IPPS/LTCH PPS proposed rule (84 FR 19170 through 19171), and in response to similar comments in the FY 2019 IPPS/LTCH PPS final rule (83 FR 41157), we believe section 414 of the MACRA and section 15005 of the 21st Century Cures Act set forth the levels of positive adjustments for FYs 2018 through 2023. We are not convinced that the adjustments prescribed by MACRA were predicated on a specific adjustment level estimated or implemented by CMS in previous rulemaking. While we had anticipated making a positive adjustment in FY 2018 to offset the reductions required to recoup the $11 billion under section 631 of the ATRA, section 414 of the MACRA required that we implement a 0.5 percentage point positive adjustment for each of FYs 2018 through 2023, and not the single positive adjustment we intended to make in FY 2018. As discussed in the FY 2017 IPPS/LTCH PPS final rule, by phasing in a total positive adjustment of only 3.0 percentage points, section 414 of the MACRA would not fully restore even the 3.2 percentage point adjustment originally estimated by CMS in the FY 2014 IPPS/LTCH PPS final rule (78 FR 50515). Moreover, as discussed in the FY 2018 IPPS/LTCH PPS final rule, Public Law 114-255, which further reduced the positive adjustment required for FY 2018 from 0.5 percentage point

---

[31] 78 Fed. Reg. at 50515.
[32] 83 Fed. Reg. at 41157.

> to 0.4588 percentage point, was enacted on December 13, 2016, after CMS had proposed and finalized the final negative -1.5 percentage point adjustment required under section 631 of the ATRA. We see no evidence that Congress enacted these adjustments with the intent that CMS would make an additional +0.7 percentage point adjustment in FY 2018 to compensate for the higher than expected final ATRA adjustment made in FY 2017, nor are we persuaded that it would be appropriate to use the Secretary's exceptions and adjustments authority under section 1886(d)(5)(I) of the Act to adjust payments in FY 2020 to restore any additional amount of the original 3.9 percentage point reduction, given Congress' prescriptive adjustment levels under section 414 of the MACRA and section 15005 of the 21st Century Cures Act.
>
> After consideration of the public comments we received, we are finalizing our proposal to implement a 0.5 percentage point adjustment to the standardized amount for FY 2020.[33]

Similar statements were issued for FYs 2021[34] and 2022,[35] and both adopted a +.5 percent adjustment. In the FY 2023 IPPS Final Rule, the Secretary implemented the final, 0.4588 percentage point positive adjustment to the standardized amount and specifically noted that it was a "permanent adjustment" to the rates (*i.e.*, that it would carry forward to future years)

> Consistent with the requirements of section 414 of the MACRA, we proposed to implement a 0.5 percentage point positive adjustment to the standardized amount for FY 2023. *We stated that this would constitute a **permanent** adjustment to payment rates*. We also stated that this proposed 0.5 percentage point positive adjustment is the final adjustment prescribed by section 414 of the MACRA. Along with the 0.4588 percentage point positive adjustment for FY 2018, and the 0.5 percentage point positive adjustments for FY 2019, FY 2020, FY 2021, and FY 2022, this final adjustment will result in combined positive adjustment of 2.9588 percentage points (or the sum of the adjustments for FYs 2018 through 2023) to the standardized amount.
>
> We received no public comments on the proposed adjustment for FY 2023 and are finalizing our proposal to implement a 0.5 percentage point positive adjustment to the standardized amount for FY 2023. As indicated, this finalized 0.5 percentage point positive adjustment for FY 2023 is the final adjustment prescribed by section 414 of the MACRA.[36]

**Providers' Requests for Hearing:**

---

[33] 84 Fed. Reg. 42044, 42057 (Aug. 16, 2019).
[34] 85 Fed. Reg. 58432, 58444-45 (Sept. 18, 2020).
[35] 86 Fed. Reg. 44774, 44795 (Aug. 13, 2021).
[36] 87 Fed. Reg. 48780, 48800 (Aug. 10, 2022) (emphasis added).

Notice of Dismissal for Case Nos. 24-1419GC *et al.*
Toyon FFY 2024 ATRA/MACRA .9412% Adjustment Groups
Page 8

The Providers claim their FFY 2024 payments are incorrectly low "in violation of section 7 of the [TMA], as amended by the [ATRA], section 414 of the [MACRA] and the 21st Century Cures Act."[37] They argue that CMS's "unlawful retention of the 0.9412% reduction in FFY 2024 constitutes arbitrary and capricious action and an abuse of discretion."[38]

The Providers explain that:

> After a decade of enduring the Secretary's negative and positive adjustments as outlined above, Providers still face a remaining net negative reduction of 0.9412% to their standardized payment amounts. Rather than reverse this negative adjustment in FFY 2024 as expected, the Secretary has retained this reduction in its FFY 2024 Medicare IPPS Final Rule. 88 Fed. Reg. at 58653-54. Providers assert the Secretary's retention of this reduction in FFY 2024 is a violation of mandates established by ATRA, MACRA and the 21st Century Cures Act that Medicare's recoupment actions outlined above should only occur through 2023.
>
> \*\*\*
>
> As statutory mandates explicitly state that the base rate reductions should only apply through 2023, the Secretary is barred from further applying any of the adjustments of ATRA, MACRA, and the 21st Century Cures Act to discharges in FFY 2024. *See* TMA §§ 7(b)(1), (4), as amended. Further, the Secretary's unlawful retention of the 0.9412% reduction in FFY 2024 constitutes arbitrary and capricious action and an abuse of discretion. 5 U.S.C. § 706(2)(A). Providers challenge the Secretary's retention of the 0.9412% base rate reduction, and request the Provider Reimbursement Review Board direct the Secretary to make a positive adjustment to Providers' standardized payment amount.[39]

**Board's Decision:**

*A. Jurisdiction*

A group of Providers generally have a right to a hearing before the Board with respect to specific items claimed on timely filed cost reports if:

- They are dissatisfied with final determinations of the Medicare Contractor;
- The request for a hearing of each Provider is filed within 180 days of the date of receipt of the final determinations. Providers are permitted to appeal from a published Federal Register;

---

[37] *E.g.*, PRRB Case 24-1419GC Statement of the Issue at 1.
[38] *Id*. at 2.
[39] *Id.* at 1 – 2.

Notice of Dismissal for Case Nos. 24-1419GC *et al.*
Toyon FFY 2024 ATRA/MACRA .9412% Adjustment Groups
Page 9

- The matter at issue involves a single question of fact or interpretation of law, regulations, or CMS Rulings that is common to each provider in the group; and
- The amount in controversy is, in the aggregate, $50,000 or more.[40]

As noted above, the Medicare Contractor has not filed any jurisdictional challenge or noted any jurisdictional impediments for any providers in any of the eighteen (18) appeals that are the subject of the initial appeals.

The Providers have all appealed from the Federal Register, a valid final determination, within the required timeframe and each case has an amount in controversy that exceeds $50,000. The cases also involve a single interpretation of law that is common to each Provider in each group.

The Board would normally have jurisdiction over this type of issue; however, section 5 of the TMA, however, specifically precludes administrative or judicial review of adjustments made thereunder:

> (5) JUDICIAL REVIEW.—There shall be no administrative or judicial review under section 1878 of the Social Security Act (42 U.S.C. 1395oo) or otherwise of any determination or adjustments made under this subsection.

### B. D.C. District Court in *Fresno Community Hosp. & Med. Ctr. v. Azar*[41]

In *Fresno v. Azar*, hundreds of hospitals argued "that an adjustment of at least +1.1588% was required in order for the Secretary not to continue unlawfully a prior -0.7% recoupment adjustment made in fiscal year 2017."[42] The Secretary moved to dismiss the claims in Providers' Complaint, arguing that Congress has prohibited review of the Secretary's determinations and adjustments made under § 7(b) of the TMA.[43] The U.S. District Court for the District of Columbia ("D.C. District Court") agreed with regard to three of five counts, also finding that the claims did not fit within the narrow *ultra vires* exception to Congress' bar on judicial review. Two claims survived the Motion to Dismiss because they pertained to the Secretary's failure to exercise his "exceptions and adjustments" discretion under 42 U.S.C. § 1395ww(d)(5)(I), not adjustments under TMA § 7(b).[44]

The five counts brought by the Providers in *Fresno v. Azar* were as follows:

1. The Secretary's failure to restore the additional -0.7 percent ATRA reduction in 2018 adjustment was unlawful based on the Administrative Procedure Act ("APA"), the Medicare Act, and other statutes;

---

[40] 42 U.S.C. § 1395oo(a); 42 C.F.R. §§ 405.1835 – 1840.
[41] 370 F.Supp.3d 139 (D.D.C. 2019) ("*Fresno v. Azar*").
[42] *Id.* at 142.
[43] *Id.*
[44] *Id.* at 143.

2. The Secretary violated the APA, the Medicare Act, and other statutes by failing to explain his reasons for not offsetting the additional -0.7 percent recoupment adjustment in 2018 through his "exceptions and adjustments" discretion;

3. The Secretary violated the APA, the Medicare Act, and other statutes by failing to adequately address commenters' questions and requests concerning the use of the Secretary's "exceptions and adjustments" discretion in implementing the 2018 adjustment;

4. The Providers requested that the Court mandamus the Secretary to restore the additional -0.7 percent adjustment which was made in 2017; and

5. Under the All Writs Act, Providers argued that they were entitled to an offsetting positive adjustment of +0.7 percent for fiscal year 2018.[45]

In support of these claims and that they were not precluded from review, the Providers made three arguments. First, that they were not seeking to review the +0.4588 percent positive adjustment for FY 2018 but rather the wrongful continuation of a -0.7 percent recoupment adjustment into FY 2018. Second, that the court could review the +0.4588 percent positive adjustment and the continuation of the -0.7 percent recoupment adjustment because it was plainly unlawful. Third, and finally, that even if other claims are precluded from review, the claims challenging the Secretary's failure to exercise his "exceptions and adjustments" discretion are not barred by the preclusion statute.

With regard to the first argument that the Providers' challenge was not to the +0.4588 percent positive adjustment for FY 2018 but rather the wrongful continuation of a -0.7 percent recoupment adjustment, the D.C. District Court disagreed and noted that "crafty pleading" and "clever phrasing" could not avoid the bar on judicial review.[46] It reasoned:

> Plaintiffs' assertion that the Secretary improperly determined that TMA § 7(b)(2) permitted him to continue a -0.7% recoupment adjustment into fiscal year 2018 still challenges a determination or adjustment made under TMA § 7(b). Accordingly, judicial review is barred.
>
> ****
>
> In order to grant Plaintiffs' requested relief, the Court would need to order the Secretary to make a different adjustment for 2018 than the one that he decided was required. To order the Secretary to make a different adjustment than the one he intended would necessarily require the Court to review an adjustment made under TMA § 7(b), which is prohibited by the preclusion statute. *See* TMA § 7(b)(5). Accordingly, Plaintiffs' claims fall under the clear language of the TMA's preclusion statute.[47]

---

[45] *Id.* at 148.
[46] *Id.* at 149.
[47] *Id.* at 150.

The Providers also claimed that continuing the -0.7 percent recoupment adjustment into FY 2017 violated TMA § 7(b)(2), which states that an adjustment made under § 7(b)(1)(B) for discharges in a year cannot be included in the determination of standardized amounts for subsequent years. Since the FY 2017 recoupment adjustment was -1.5% instead of -0.8%, the implementation of a +0.4588 adjustment as mandated by Congress fell short when failing to take into account the excess -0.7 percent. Thus, since the adjustment was unlawful, the Providers claimed the preclusion provision did not apply.[48]

The court disagreed, finding that TMA § 7(b)(5) precluded review of *any* determination or adjustment made under § 7(b), not just "proper" ones.[49] More importantly, this argument would completely subsume the *ultra vires* doctrine, which specifically deals with adjustments made "in violation" of a law giving agencies authority:

> Accordingly, Plaintiffs' argument that the Secretary's +0.4588% adjustment violated TMA § 7(b)(2) by leaving in place a recoupment adjustment from 2017 does not overcome the TMA's preclusion statute. Instead, Plaintiffs' argument should be addressed under the ultra vires doctrine[.][50]

The court then turned to the Providers' second argument, that the continuation of the -0.7% recoupment adjustment was plainly unlawful – or that the Secretary had acted *ultra vires*:

> Even if the preclusion statute applies to Plaintiffs' claims, the Court may still be able to review those claims under the ultra vires doctrine. Congress has not and cannot limit judicial review to correct a patently unlawful agency action. Under the ultra vires doctrine, an agency action is open to judicial review, even in the face of an applicable preclusion statute, when it "patently misconstrues a statute, disregards a specific and unambiguous statutory directive, or violates a specific command of a statute."[51]

The court acknowledged the Providers' argument: the +0.4588 percent adjustment required by TMA § 7(b)(1)(B)(iii) for fiscal year 2018 was predicated on the 2014 to 2017 recoupment adjustments totaling only -3.2 percent, but there had been an additional -0.7 percent recoupment adjustment in 2017. The FY 2018 +0.4588 percent adjustment did not "remove" the FY 2017 -0.7 percent recoupment adjustment, which violated TMA § 7(b)(2) by allowing adjustments from prior years to be included in adjustments for subsequent years. Since the adjustment violates TMA § 7(b)(2), it is "plainly unlawful" or *ultra vires* and subject to judicial review, despite the preclusion provision at TMA § 7(b)(5).[52]

The court disagreed, noting that TMA § 7(b)(1)(B)(iii) *explicitly* required the Secretary to make the +0.4588 percent adjustment, and *only* that adjustment, for FY 2018. It also explained that

---

[48] *Id.*
[49] *Id.*
[50] *Id.* at 152.
[51] *Id.* (citations omitted).
[52] *Id.* at 153.

this very specific mandate was enacted later in time than the general prohibition on continuing recoupment adjustments found in TMA § 7(b)(2).  The court concluded:

> The Secretary's decision to follow the explicit Congressional mandate to implement a +0.4588% adjustment and "not make the adjustment . . . that would otherwise apply" in 2018, which Congress passed with full knowledge of the greater-than-previously-estimated 2017 recoupment adjustment, was not an ultra vires act.[53]

Thus, the court found that the preclusion of administrative or judicial review applied to counts 1, 4, and 5 of the Providers' Complaint.  Counts 2 and 3, however, concerned whether the "Secretary failed to adequately explain the rationale for[, and failing to address commenters' questions and requests regarding,] not applying his 'exceptions and adjustments' discretion under 42 U.S.C. § 1395ww(d)(5)(I) to make an additional +0.7% adjustment in 2018, offsetting the 2017 -0.7% recoupment adjustment."[54]  The court noted it could not review a claim that was "inextricably intertwined" with barred claims.[55]  The Secretary argued that he did not use his "exceptions and adjustments" discretion because he determined a +0.7 percent adjustment was prohibited under TMA § 7(b)(1)(B)(iii).[56]  The court found, however:

> It is not clear from the 2018 final rule, or from any other source provided by Defendant, that the Secretary considered whether or not to grant a +0.7% adjustment under the "exceptions and adjustments" discretionary authority, despite comments urging him to do so.[57]

The court acknowledged that perhaps the Secretary declined to exercise his discretionary authority because he considered it to be prohibited under the TMA, thus making Counts 2 and 3 "inextricably intertwined" with the other, precluded claims.  The court found, however, that the Secretary failed to prove that and, as a result, it had jurisdiction over these two, specific claims.[58]

### C. D.C. Circuit Court in *Fresno Community Hosp. & Med. Ctr. v. Azar*[59]

The Providers appealed to the U.S. Circuit Court for the District of Columbia ("D.C. Circuit Court").  It found that TMA § 7(b)(5) defeats the presumption favoring review of agency action, so the only question was whether the challenged action was "the sort shielded form review."[60]  It made the same finding as the D.C. District Court: that labeling the challenge as a continued inclusion or failure to reverse a -0.7 percent adjustment is still, in reality, a challenge to an "adjustment" which is barred by TMA § 7(b)(5).[61]

---

[53] *Id.*
[54] *Id.* at 156-157.
[55] *Id.* at 157.
[56] *Id.*
[57] *Id.* at 158.
[58] *Id.*
[59] 987 F.3d 158 (D.C. Cir. 2021) ("*Fresno v. Cochran*").
[60] *Id.* at 161 (quoting *Amgen Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004).
[61] *Id.* at 161-162.

The court next considered the Providers' argument that the -0.6 percent adjustment should be set aside as *ultra vires*, noting that they had the burden of showing "that the Secretary flouted a clear, specific, statutory command."[62]  The Providers made the same argument as before the D.C. District Court: that TMA § 7(b)(2) bars the Secretary from allowing any recoupment adjustment to continue into a subsequent year, and by carrying over the -0.7% adjustment into 2018, the Secretary violated an explicit statutory prohibition.[63]  The D.C. Circuit Court disagreed, noting that the Providers did not object to *other* adjustments being carried over in prior fiscal years. Ultimately, the court found that TMA § 7(b)(2) did not actually forbid the Secretary from carrying over adjustments and affirmed the D.C. District Court's decision.

## D. Preclusion of Board Jurisdiction

As noted above and in the decision of both the D.C. District Court and the D.C. Circuit Court in *Fresno v. Azar*, TMA § 7(b)(5) generally prohibits administrative and judicial review of any determinations or adjustments made pursuant to the TMA.  The Providers in these appeals challenge their FFY 2024 IPPS payments on the grounds that those payments were (and continue to be) improperly reduced due to the "**unlawful retention of the 0.9412% reduction in FFY 2024** . . . ."[64]

The D.C. District Court directly addressed these arguments and found that the distinction between challenging an adjustment and challenging the failure to eliminate an adjustment amounts to nothing more than "crafty pleading" and "clever phrasing" that cannot avoid the bar on judicial review.[65]  In this regard, the Board further notes that, in the preamble to the FY 2024 IPPS Final Rule, the Secretary responded to directly to the issue raised in this appeal and *relied on the TMA*, as amended, in declining "to adjust any payments in FY 2024 [*sic* to] restore any additional amount of the original 3.9 percentage point reduction."[66]   Indeed, the *permanence* of the adjustment made in

---

[62] *Id.* at 162 (citing *Nyunt v. Chairman, Broad Bd. Of Govs*., 589 F.3d, 449 (D.C. Cir. 2009)).
[63] *Id.*
[64] *E.g.*, PRRB Case 24-1419GC Statement of the Issue at 2 (Feb. 22, 2024) (emphasis added).
[65] *Fresno v. Azar* at 149.
[66] 88 Fed. Reg. at 58654.  The following is an excerpt from this preamble discussion in the FY 2024 IPPS Final Rule at 88 Fed. Reg. 58654 to give the context for the quote:
> *Comment*: Several commenters requested that CMS make a positive adjustment to restore the full amount of the documentation and coding recoupment adjustments in the FY 2024 IPPS final rule which they asserted is required under section (7)(B)(2) and (4) of the TMA . . ., Abstinence Education, and QI [Qualifying Individuals] Programs Extension Act of 2007 (Pub. L. 110–90). Commenters stated that the statute is explicit that CMS may not carry forward any documentation and coding adjustments applied in fiscal years 2010 through 2017 into IPPS rates after FY 2023. Commenters contended that CMS, by its own admission, has restored only 2.9588 percentage points of a total 3.9 percentage point reduction. By not fully restoring the total reductions, commenters believe that CMS is improperly extending payment adjustments beyond the FY 2023 statutory limit. A commenter stated that, even if CMS disputes it is required to make such an adjustment, CMS should use its special exceptions and adjustments authority to address the shortfall.
> *Response*: As of FY 2023, CMS completed the statutory requirements of section 7(b)(1)(B) of Pub. L. 110–90 as amended . . . . As we discussed in the FY 2022 IPPS/LTCH PPS final rule (86 FR 44794 through 44795), the FY 2021 IPPS/LTCH PPS final rule (85 FR 58444 through 58445) and in prior rules, we believe section 414 of the MACRA and section 15005 of the 21st Century Cures Act set forth the levels of positive adjustments for FYs 2018 through 2023. We are not convinced that the adjustments prescribed by MACRA were predicated on a specific adjustment level estimated or

the FY 2023 IPPS Final Rule was specifically discussed as part of that rulemaking as noted by the Secertary in the preamble to the FY 2023 IPPS Final Rule: "We stated [in the proposed rulemaking] that this would constitute a *permanent* adjustment to payment rates."[67]  Accordingly, the Board finds that the Board jurisdiction over this appeal is precluded by TMA § 7(b)(5).

The only claims which survived in *Fresno v. Azar* were those alleging the Secretary should have applied his "exceptions and adjustments" discretion under 42 U.S.C. § 1395ww(d)(5)(I) to make an additional +0.7 percent adjustment in 2018.  The Providers in these group appeals have not cited 42 U.S.C. § 1395ww(d)(5)(I) or discussed the Secretary's "exceptions and adjustments" discretion in any capacity.  Board Rule 7.2.1 (Nov. 2021) requires that, for each issue raised in an appeal request, a Provider must submit a concise issue statement describing, *inter alia*, the controlling authority, why the adjustment is incorrect, and the basis for jurisdiction before the Board.  The Providers failed to make this argument in their requests for hearing and, as such, the Board will not address or consider it.

---

> implemented by CMS in previous rulemaking. We see no evidence that Congress enacted these adjustments with the intent that CMS would make an additional +0.7 percentage point adjustment in FY 2018 to compensate for the higher than expected final ATRA adjustment made in FY 2017, nor are we persuaded that it would be appropriate to use the Secretary's exceptions and adjustments authority under section 1886(d)(5)(I) of the Act **to adjust payments in <u>FY 2024</u> restore any additional amount of the original 3.9 percentage point reduction, <u>given Congress' directive regarding prescriptive adjustment levels under section 414 of the MACRA and section 15005 of the 21st Century Cures Act</u>**. Accordingly, in the FY 2018 IPPS/LTCH PPS final rule (82 FR 38009), we implemented the required +0.4588 percentage point adjustment to the standardized amount for FY 2018. In the FY 2019 IPPS/LTCH PPS final rule (FY 2019 final rule) (83 FR 41157), the FY 2020 IPPS/LTCH PPS final rule (FY 2020 final rule) (84 FR 42057), the FY 2021 IPPS/LTCH PPS final rule (FY 2021 final rule) (85 FR 58444 and 58445), the FY 2022 IPPS/LTCH PPS final rule (FY 2022 final rule) (86 FR 44794 and 44795), and the FY 2023 IPPS/LTCH PPS final rule (FY 2023 final rule) (87 FR 48800), consistent with the requirements of section 414 of the MACRA, we implemented 0.5 percentage point positive adjustments to the standardized amount for FY 2019, FY 2020, FY 2021, FY 2022 and FY 2023, respectively. As discussed in the FY 2023 final rule, the finalized 0.5 percentage point positive adjustment for FY 2023 is the final adjustment prescribed by section 414 of the MACRA.

(Italics emphasis in original and bold and italics emphasis added.)

[67] 87 Fed. Reg. at 48800 (emphasis added).  Similarly, the Board notes that the FY 2023 IPPS Proposed Rule included the following discussion in the preamble at 87 Fed. Reg. 28108, 28126 (May 10, 2022) (emphasis added):

> In the FY 2019 IPPS/LTCH PPS final rule (83 FR 41157), the FY 2020 IPPS/ LTCH PPS final rule (84 FR 42057), FY 2021 IPPS/LTCH PPS final rule (85 FR 58444 and 58445), and the FY 2022 IPPS/LTCH PPS final rule (86 FR 44794 and 44795), consistent with the requirements of section 414 of the MACRA, we implemented 0.5 percentage point positive adjustments to the standardized amount for FY 2019, FY 2020, FY 2021, and FY 2022, respectively. *We indicated the FY 2018, FY 2019, FY 2020, FY 2021, and FY 2022 adjustments were **permanent** adjustments to payment rates*. We also stated that we plan to propose a future adjustment required under section 414 of the MACRA for FY 2023 in future rulemaking.
>
> ****
>
> Consistent with the requirements of section 414 of the MACRA, we are proposing to implement a 0.5 percentage point positive adjustment to the standardized amount for FY 2023.  *This would constitute a **permanent** adjustment to payment rates*.

Notice of Dismissal for Case Nos. 24-1419GC *et al.*
Toyon FFY 2024 ATRA/MACRA .9412% Adjustment Groups
Page 15

Based on the foregoing, the Board finds that, pursuant to TMA § 7(b)(5), it lacks substantive jurisdiction to review the issue appealed in the eighteen (18) group appeals listed in **Appendix A** and, therefore, is dismissing the cases.[68]

Accordingly, the Board closes these 18 groups and removes them from the Board's docket.  Review of this determination is available under the provisions of 42 U.S.C. § 1395oo(f) and 42 C.F.R. §§ 405.1875 and 405.1877.

<u>Board Members Participating</u>:

Clayton J. Nix, Esq.
Kevin D. Smith, CPA
Ratina Kelly, CPA
Nicole E. Musgrave, Esq.

For the Board:

5/17/2024

X    Clayton J. Nix
_____
Clayton J. Nix, Esq.
Chair
Signed by: PIV

Enclosure:  Appendix A – List of 18 Group Cases Covered by this Dismissal Determination

cc: Lorraine Frewert, Noridian Healthcare Solutions c/o Cahaba Safeguard Administrators (J-E)
Byron Lamprecht – WPS Government Health Administrators (J-5)
Dana Johnson, Palmetto GBA c/o National Government Services, Inc. (J-M)
Michael Redmond, Novitas Solutions, Inc. (J-L) (J-H)
John Bloom, Noridian Healthcare Solutions (J-F)
Judith Cummings, CGS Administrators (J-15)
Wilson Leong, FSS

---

[68] The Board recognizes that the Providers maintain the Board should find jurisdiction over the instant appeals "consistent with the Board's previous grants of EJR" for the cases underlying the *Fresno v. Azar* litigation.  However, those prior determination did not address the TMA preclusion provisions, and it is clear that both the D.C. District Court and the D.C. Circuit Court specifically found that the TMA preclusion provisions were applicable to those appeals.  Consequently, the Board finds that it erred in finding jurisdiction in those earlier cases as supported by the analysis in this determination and the Courts' decisions in the *Fresno v. Azar* litigation.

Notice of Dismissal for Case Nos. 24-1419GC *et al.*
Toyon FFY 2024 ATRA/MACRA .9412% Adjustment Groups
Page 16

## Appendix A
## List of 18 Cases Covered by this Dismissal Determination

| Case No. | Case Name |
| --- | --- |
| 24-1419GC | Alameda Health System FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group |
| 24-1425GC | Ardent Health FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group |
| 24-1427GC | CHRISTUS Health FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group |
| 24-1429GC | Emanate Health FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group |
| 24-1432GC | Memorial Hermann FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group |
| 24-1437GC | Medical Univ of SC FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group |
| 24-1440GC | OhioHealth FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group |
| 24-1444GC | Palomar Health FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group |
| 24-1448GC | Pipeline FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group |
| 24-1451GC | OHSU Health FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group |
| 24-1452GC | RWJ Barnabas FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group |
| 24-1453GC | St. Francis Health System FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group |
| 24-1458GC | SSM Health FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group |
| 24-1459GC | Sutter Health FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group |
| 24-1461GC | Trinity Health FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group |
| 24-1462GC | Univ of California FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group |
| 24-1463GC | WellSpan Health FFY 2024 ATRA/MACRA 0.9412% Adjustment CIRP Group |
| 24-1464G | Toyon Associates FFY 2024 ATRA/MACRA 0.9412% Adjustment Group |